Ex. 671, Letter from Dr. Hale (ACOG) to Sen. Dole of 11/6/95 (same).

Ex. 671, Letter from Dr. Hale (ACOG) to Pres. Clinton of 4/9/96 (same).

State of **MINNESOTA**, by its Attorney General Mike **HATCH**, and Collin Peterson, Starkey Grove, and Charles Orvik, Plaintiffs,

v.

John **HOEVEN**, in his official capacity as Governor of the State of North Dakota, and Dean C. Hildebrand, in his official capacity as Director of the North Dakota Game and Fish Department, Defendants.

No. A1–04–021.

United States District Court, D. North Dakota, Southwestern Division.

Aug. 17, 2004.

Harry Sieben, Jr., Sieben, Grose, Von Holtum, McCoy & Carey, Minneapolis, MN, Lawrence W. Pry, MN Attorney General's Office, St Paul, MN, for Plaintiffs.

Paul Craig Germolus, Attorney General's Office, Bismarck, ND, for Defendants.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Dismiss filed on May 10, 2004. This motion concerns the issues of whether the Plaintiffs have standing to pursue their claims in federal court and whether the Defendants can assert the defense of sovereign immunity. The merits of the claims being asserted by the Plaintiffs are not before the Court. For the reasons set forth below, the Court denies the Defendants' motion.

## I. BACKGROUND

This case arises out of legislative and administrative changes North Dakota made to its hunting regulations prior to the 2003 waterfowl hunting season. On March 10, 2004, the State of Minnesota filed suit against North Dakota's Governor, John Hoeven, and the Director of the North Dakota Game & Fish Department, Dean Hildebrand, alleging that the newly adopted regulations violate the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution. On April 8, 2004, Minnesota amended its complaint to add three individual plaintiffs: Collin Peterson, Starkey Grove, and Charles Orvik. The amended complaint added alleged violations of 42 U.S.C. § 1983.

The amended complaint sets forth five counts. Count One alleges that a July 2003 gubernatorial proclamation[1] barring non-resident hunting during the first week of waterfowl season violates the Commerce Clause and 42 U.S.C. § 1983. Count Two alleges that a statutory provision[2] eliminating statewide non-resident waterfowl licenses and requiring non-residents to hunt waterfowl in zones specified by the governor's proclamation violates the Commerce Clause and 42 U.S.C. § 1983. Count Three alleges that other statutory provisions[3] requiring non-residents to obtain a small game and waterfowl license to hunt on land they own or lease violates the Commerce Clause, the Privileges and Im-

---

1. Chapter 20.1–08 of the North Dakota Century Code sets forth the governor's powers and obligations regarding hunting proclamations.

2. N.D.C.C. § 20.1–03–07.1 states: "Except as provided in sections 20.1–02–05, 20.1–03–07.2, and 20.1–03–07.3, a nonresident may not hunt waterfowl unless that individual first obtains a nonresident waterfowl hunting license. The nonresident waterfowl hunting license entitle the nonresident to hunt waterfowl for a period of fourteen consecutive days or any two periods of seven consecutive days each. A license authorizing the fourteen-day hunting period allows hunting in a specified waterfowl hunting zone. A license authorizing two 7–day hunting periods allows hunting in a specified zone during each period. The governor, in the governor's proclamation, shall specify various waterfowl hunt-

ing zones for which nonresident waterfowl hunting licenses will be available, and may specify the number of licenses which may be issued in each zone and the manner in which they are to be issued. A nonresident is entitled to purchase only one nonresident waterfowl hunting license per year. The fourteen-day, seven-day, and two 7–day hunting period restrictions do not apply to nonresidents hunting in Richland and Sargent Counties during the early September Canada goose season."

3. N.D.C.C. § § 20.1–03–03, 04(1) (allowing residents to hunt waterfowl and other small game on their own land without a hunting license throughout open season). N.D.C.C. § 20.1–03–07 (requiring non-residents to obtain a small game license).

munities Clause, and 42 U.S.C. § 1983. Count Four alleges that a statutory provision[4] prohibiting non-residents from hunting on Game & Fish Department controlled lands during the first seven days of the pheasant hunting season violates the Commerce Clause and 42 U.S.C. § 1983. Count Five alleges that statutory provisions[5] imposing higher non-resident waterfowl license fees violates the Commerce Clause and 42 U.S.C. § 1983. The Plaintiffs ask the Court to declare North Dakota's regulations of migratory waterfowl hunting unconstitutional. The Plaintiffs also ask that the Defendants be permanently enjoined from enforcing discriminatory waterfowl hunting and licensing provisions.

On May 10, 2004, the Defendants filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[6] The Defendants assert that the Plaintiffs lack standing to bring claims under the Commerce Clause, Privileges and Immunities Clause, and 42 U.S.C. § 1983 and that the Plaintiffs' claims are barred by sovereign immunity.

## II. *LEGAL ANALYSIS*

■ Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Unlike a challenge under Rule 12(b)(6), courts may consider matters outside the pleadings. *Osborn v. United*

*States,* 918 F.2d 724, 729–30 (8th Cir.1990). The Court notes the parties have not submitted any affidavits or exhibits for the Court's review. In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept all of the factual allegations set out in the complaint as true and construe the complaint in a light most favorable to the plaintiff. *Faibisch v. University of Minnesota,* 304 F.3d 797, 802 (8th Cir.2002). Dismissal for failure to state a claim will only be granted if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claim which would entitle it to relief. Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Id.*

### A. *STANDING*

In its motion to dismiss, the Defendants argue that both the State of Minnesota and the individual plaintiffs lack standing to pursue their claims. The Defendants assert that Minnesota has failed to allege a sufficient injury to its quasi-sovereign interests. The Defendants also assert that the individual plaintiffs have failed to allege an injury in fact to a legally protected interest.

"In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified*

---

4. N.D.C.C. § 20.1–08–04.9 states: "The governor,. in the governor's proclamation, shall prohibit a nonresident from hunting for the first seven days of the pheasant season on land owned or private land enrolled by the department for the purpose of hunting or on land for which the department pays in lieu of tax payments."

5. N.D.C.C. § § 20.1–03–07.1, 12 (setting forth the licensing fees for various licenses).

6. In its motion to dismiss, North Dakota cites to subdivisions (b)(1) and (b)(6) of Rule 12 as the basis for its motion. However, in its brief accompanying the motion, North Dakota cites to subdivision (b)(3). Rule 12(b)(3) concerns improper venue. Since North Dakota did not specifically address the issue of the propriety of the venue in which this action was filed, the Court will not address whether Rule 12(b)(3) would be a basis for the dismissal of this action. The Court's ruling does not prohibit North Dakota from bringing a subsequent motion under Rule 12(b)(3). The Court will address North Dakota's motion to dismiss under the standards set forth for dismissal pursuant to Rule 12(b)(1) and 12(b)(6).

*School District v. Newdow,* —— U.S. ——, ——, 124 S.Ct. 2301, 2308, 159 L.Ed.2d 98 (2004). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute." *Id.* (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III,' *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), which itself 'defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.'" *Northeastern Florida Chapter of the Associated General Contractors of America v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (quoting *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

Three requirements constitute the "irreducible constitutional minimum" of standing. "First, a plaintiff must demonstrate an 'injury in fact,' which is 'concrete,' 'distinct and palpable,' and actual or imminent." *McConnell v. Federal Election Commission,* 540 U.S. 93, 124 S.Ct. 619, 707, 157 L.Ed.2d 491 (2003) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). "Second, a plaintiff must establish 'a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] some third party not before the court."'" *McConnell v. Federal Election Commission,* 540 U.S. 93, 124 S.Ct. 619, 707, 157 L.Ed.2d 491 (2003) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976))). "Third, a plaintiff must show the 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *McConnell v. Federal Election Commission,* 540 U.S. 93, 124 S.Ct. 619, 707, 157 L.Ed.2d 491 (2003) (quoting *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations omitted). It is important to note that an inquiry into standing is not a review of the merits of the plaintiff's claims. *Oti Kaga, Inc. v. South Dakota Housing Development Authority,* 342 F.3d 871, 878 (8th Cir.2003).

### 1. *STATE OF MINNESOTA*

The State of Minnesota brought this suit on behalf of its residents in its capacity as *parens patriae.* First Amended Complaint, ¶¶ 4, 40. Minnesota seeks to "vindicate its interest and that of its citizens in not being discriminatorily denied its rightful status within the federal system." *Id.* at ¶ 40. The Defendants contend Minnesota has not alleged a sufficient "quasi-sovereign" interest at stake in this litigation.

### a. *PARENS PATRIAE*

■ To successfully assert the *parens patriae* doctrine, a "State must assert an injury to what has been characterized as a 'quasi-sovereign' interest, which is a judicial construct that does not lend itself to a simple or exact definition." *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 601, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). Quasi-sovereign interests

"consist of a set of interests that the State has in the well-being of its populace." *Id.* at 602, 102 S.Ct. 3260. Quasi-sovereign interests generally fall into two categories. "First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.* at 607, 102 S.Ct. 3260. "Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.* at 607, 102 S.Ct. 3260.

The Defendants assert that Minnesota has not alleged a threat to the health, comfort, and welfare of its citizens. It is clear from a review of the complaint that Minnesota is not relying on its interest in its citizens' health and well-being in asserting its *parens patriae* power.

■ However, Minnesota has asserted that its citizens have suffered an injury to their legally protected interest in the right to travel. The Defendants contend that Minnesota's attempt to assert *parens patriae* standing fails for two reasons: (1) Minnesota has no rightful status to dictate how another state manages its wildlife population, and (2) North Dakota's hunting regulations do not cause irreparable injury to Minnesota's economy, nor do such regulations directly or impermissibly burden interstate commerce. The Defendants misconstrue the requirements for asserting *parens patriae* standing under the second set of quasi-sovereign interests—a state's interest in not being discriminatorily denied its rightful status within the federal system.

As the Supreme Court stated in *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), a "State has an interest in securing observance of the terms under which it participates in the federal system."

In the context of *parens patriae* actions, this means ensuring that the State and its residents are not excluded from the benefits that are to flow from participation in the federal system. Thus, the State need not wait for the Federal Government to vindicate the State's interest in the removal of barriers to the participation by its residents in the free flow of interstate commerce. Similarly, federal statutes creating benefits or alleviating hardships create interests that a State will obviously wish to have accrue to its residents. Once again, we caution that the State must be more than a nominal party. But a State does have an interest, independent of the benefits that might accrue to any particular individual, in assuring that the benefits of the federal system are not denied to its general population.

. . . . .

Just as we have long recognized that a State's interests in the health and well-being of its residents extend beyond mere physical interests to economic and commercial interests, we recognize a similar state interest in securing residents from the harmful effect of discrimination. This Court has had too much experience with the political, social, and moral damage of discrimination not to recognize that a State has a substantial interest in assuring its residents that it will act to protect them from these evils. 458 U.S. 592, 607–09, 102 S.Ct. 3260, 73 L.Ed.2d 995 (internal quotations and citations omitted).

The Defendants' assertion that North Dakota's hunting regulations do not cause irreparable injury to Minnesota's economy is not relevant to this analysis. Minnesota need not show an irreparable injury to its economy. To assert *parens patriae* standing, Minnesota must simply assert an interest that its citizens are being denied their rightful status in the federal system through unreasonable discrimination. In its complaint, Minnesota clearly asserts

that "The State of Minnesota bring this suit *parens patriae* to vindicate its interest and that of its citizens in not being discriminatorily denied its rightful status within the federal system." This assertion, coupled with citation to North Dakota hunting regulations that on their face differentiate between residents and non-resident, sets forth specific facts alleging a violation of a quasi-sovereign interest. At this stage, the Court must accept all of the allegations set out in the complaint as true and must construe the complaint in a light most favorable to the Plaintiffs. As a result, the Court finds that Minnesota has adequately asserted a quasi-sovereign interest—the right of its citizens to be free from unreasonable discrimination based solely upon their state of residence.

■ There is no doubt that citizens have a right to be free from discrimination based on their state of residence. *Saenz v. Roe*, 526 U.S. 489, 502, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). However, this right is not absolute. *See Saenz v. Roe*, 526 U.S. 489, 502, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) (stating the Privileges and Immunities Clause provides protection for non-residents in the areas of procuring medical services and engaging the commercial activity, but that there may be substantial reasons for requiring non-residents to pay more for a hunting license or to enroll in a state university); *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 383, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978) (stating the Privileges and Immunities Clause has been used to prevent states from imposing unreasonable burdens on citizens of other states in their pursuit of employment, in the ownership and disposition of privately held property within the state, and in access to the courts, but that states may distinguish between residents and non-residents in the areas of voting and qualification for elective office). These cases may toll the death knell for Minnesota's claims in this litigation.

■ The Court's determination that Minnesota has standing to pursue their claims does not speak to the likelihood of the claims' success. In support of their motion to dismiss, the Defendants engage in a lengthy discussion regarding the propriety of North Dakota's hunting regulations. The Defendants assert that the pursuit of recreational hunting opportunities is not interstate commerce and that North Dakota's hunting regulations do not impact interstate commerce. Although the Defendant's assertions may well prevail at the summary judgment stage of the litigation, the Court finds the discussion is premature. In determining whether the plaintiffs have standing to pursue their claims, the Court is prohibited from reviewing the merits of the claims. *See Oti Kaga, Inc. v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir.2003). The issue of whether North Dakota's hunting regulations violate either the Privilege and Immunities Clause or the Commerce Clause is the crux of this lawsuit. Therefore, a determination of the likelihood of success on such claims is unwarranted in the resolution of the standing issue.

**b. INJURY IN FACT**

■ "Injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Oti Kaga, Inc. v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir.2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In its complaint, Minnesota asserts that its citizens have been unreasonably burdened by North Dakota's waterfowl hunting regulations. Minnesota cites to several North Dakota laws which facially discriminate between residents and non-residents. The injury to Minnesota's quasi-sovereign in-

terest is the inability of its residents to travel to another state without being burdened by additional regulations based solely on their status as non-residents. The Court finds that Minnesota has adequately set forth an invasion of a legally protected interest (the right to be free from discrimination based on a citizen's state of residence) which is concrete and particularized, and not conjectural or hypothetical. Thus, the State of Minnesota has satisfied the first prong of the standing analysis.

#### c. *INJURY TRACEABLE TO THE CHALLENGED ACTION*

"Traceability requires proof of causation, showing the injury resulted from the actions of the defendant 'and not ... [from] the independent action of some third party not before the court.'" *Oti Kaga Inc. v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir.2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Defendants do not specifically challenge the traceability of Minnesota's alleged injury to the hunting regulations. The Court finds the alleged injury is fairly traceable to the Defendants' actions in enacting the hunting regulations. Thus, the State of Minnesota has satisfied the second prong of the standing analysis.

#### d. *REDRESSABILITY*

To satisfy the redressibility requirement, "a plaintiff must show the substantial likelihood that the requested relief will remedy the alleged injury in fact." *McConnell v. Federal Election Commission*, 540 U.S. 93, 124 S.Ct. 619, 707, 157 L.Ed.2d 491 (2003) (internal quotations omitted). Again, the Defendants do not specifically question the redressability requirement. It is clear from the requested relief that if the Defendants were forbidden from enacting hunting regulations that discriminated on the basis of residency,

the alleged injury would be remedied. Thus, the Court finds the State of Minnesota has satisfied the third prong of the standing analysis.

Accordingly, the Court finds the State of Minnesota has adequately asserted its *parens patriae* standing by asserting the interests of its citizens to be free from discrimination based solely on their state of residency. In addition, Minnesota has set forth an injury in fact, namely, the alleged burdens placed on its citizens by North Dakota's waterfowl hunting regulations. Minnesota has also satisfied the traceability and redressability requirements of standing. Thus, the Court finds the State of Minnesota, acting in its *parens patriae* capacity, has standing to challenge the constitutionality of North Dakota's hunting regulations.

#### 2. *PLAINTIFFS PETERSON, GROVE, AND ORVIK*

In order to address the issue of standing as to the individual plaintiffs, some additional background is needed. The following is a summary of the facts alleged in the Plaintiffs' complaint, which the Court, at this stage, must accept as true. Plaintiff Collin Peterson, a United States Congressman who represents Minnesota's Seventh Congressional District, is a resident of the State of Minnesota. Peterson regularly hunts waterfowl and other game birds in Minnesota and North Dakota and plans to do so in the future.

Plaintiff Starkey Grove is a native of North Dakota who now resides in Minnesota. Grove's family continues to reside in and around the town of Wishek, in McIntosh County, North Dakota. Grove has hunted waterfowl and other game with his family in the Wishek area for decades. He did not hunt waterfowl in North Dakota during the 2003 season. Grove attributes his decision not to hunt in 2003 to the

"onerous restriction imposed by North Dakota on non-resident hunters," but Grove intends to continue hunting in North Dakota in the future. Grove asserts he has been affected by the non-resident waterfowl hunting restrictions because he is unable to hunt with other members of his family on land owned by the family during periods when the season is closed to non-resident hunters. Grove also contends he planned to purchase land in the Wishek area, but that he has abandoned that plan because the non-resident hunting rules so substantially impaired his ability to use and enjoy the land for hunting.

Plaintiff Charles Orvik is also a North Dakota native who now resides in Minnesota. Orvik's parents live in North Dakota. Orvik is the co-owner of several hundred acres of land in Eddy and Grand Forks Counties, North Dakota. He hunts waterfowl and other game birds on that land every year with his family, and he intends to continue to hunt during the 2004 season and thereafter. Orvik alleges that as a direct result of the North Dakota non-resident waterfowl hunting restrictions, he was and continues to be unable to hunt on his own land with other members of his family during the periods when the season is closed to non-resident hunting.

### a. INJURY IN FACT

■ "Injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Oti Kaga, Inc. v. South Dakota Housing Development Authority,* 342 F.3d 871, 878 (8th Cir.2003) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

The Defendants argue that Peterson, Grove and Orvik have not alleged an injury in fact because they have not alleged that they are prohibited from hunting waterfowl in North Dakota. The Defendants

cite no case law for the proposition that a complete prohibition is necessary to allege an injury in fact. The individual plaintiffs respond by stating that for no other reason than their non-resident status, they are required to pay higher license fees; they are prohibited from hunting during the first week of the waterfowl season; they are prohibited from hunting on state lands during the opening week of pheasant season; they are prohibited from hunting for all but one or two weeks of the waterfowl season; and they are restricted to hunting in designated non-resident zones.

"When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the *plaintiff is himself an object of the action* (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury...." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561–62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (emphasis added). Unlike the plaintiffs in *Lujan* who were attempting to assert injuries arising from the alleged unlawful regulation of someone else, the individual defendants in this case are challenging government action of which they are the object. It is clear that the individual plaintiffs are the object of the hunting regulations by virtue of their status as non-residents. The Court finds the injuries alleged by the individual plaintiffs are injuries in fact sufficient to satisfy the first prong of the standing analysis.

### b. INJURY TRACEABLE TO THE CHALLENGED ACTION

■ "Traceability requires proof of causation, showing the injury resulted from the actions of the defendant 'and not

... [from] the independent action of some third party not before the court.' " *Oti Kaga Inc. v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir.2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Defendants assert that the plaintiffs' alleged injuries are self-inflicted because they made the decisions not to hunt in North Dakota. In response, the individual plaintiffs contend their change in hunting habits was based exclusively on North Dakota's hunting regulations. Again, at this stage of the litigation, a plaintiff need only allege general factual allegations that an injury resulted from the defendant's conduct. In their complaint, the individual plaintiffs have directly attributed their change in hunting habits to the hunting regulations enacted by the Defendants. The Court finds that the individual plaintiffs' alleged injuries are fairly traceable to the North Dakota hunting regulations. Thus, the individual plaintiffs have satisfied the second prong of the standing analysis.

### c. *REDRESSABILITY*

To satisfy the redressibility requirement, "a plaintiff must show the substantial likelihood that the requested relief will remedy the alleged injury in fact." *McConnell v. Federal Election Commission*, 540 U.S. 93, 124 S.Ct. 619, 707, 157 L.Ed.2d 491 (2003) (internal quotations omitted). Just as for the State of Minnesota, it is clear from the requested relief that if the Defendants were forbidden from enacting hunting regulations that discriminated on the basis of residency, the individual plaintiffs' alleged injuries would be remedied. Thus, the Court finds the individual plaintiffs have satisfied the third prong of the standing analysis.

To summarize, the Court finds the individual plaintiffs have alleged an injury in fact fairly traceable to the actions of the Defendants. In addition, they have requested relief that would remedy the injury. Thus, the Court finds the individual plaintiffs have standing to challenge the constitutionality of North Dakota's hunting regulations.

### B. *SOVEREIGN IMMUNITY*

The Defendants also assert that Eleventh Amendment immunity prohibits the action filed by the Plaintiffs. The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The United States Supreme Court stated in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), that "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman*, 415 U.S. 651, 663, 94 S.Ct. 1347 (citations omitted). Although the State of North Dakota was not a named party, the law generally considers state officials acting in their official capacities to be acting on behalf of the state, and thus, state officials are generally immune from lawsuits to which the state had not consented under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is not a suit against the official personally, for the real party in interest is the entity."); *see also Pennhurst State School & Hosp. v. Hald-*

*erman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

 However, under the doctrine of *Ex parte Young,* the Eleventh Amendment does not prohibit "certain suits seeking declaratory and injunctive relief against state officers." *Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota,* 362 F.3d 512, 516 (8th Cir.2004) (citing *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). In other words, "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Missouri Child Care Ass'n v. Cross,* 294 F.3d 1034, 1037 (8th Cir.2002).

The Defendants rely on *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), for the proposition that the *Ex parte Young* exception does not apply in the current case, thus barring the suit. In *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), a fragmented United States Supreme Court held the Eleventh Amendment barred a suit against the state of Idaho by an Indian tribe seeking to quiet title to submerged land within the state. In the portion of the opinion joined by a majority of the Justices, the Court opined that the relief the tribe sought was the "functional equivalent of a quiet title action which implicates special sovereignty interests." 521 U.S. 261, 281, 117 S.Ct. 2028. The Court directed that in cases such as this a court "must examine the effect of the [relief requested] and its impact on these special sovereignty interests in order to decide whether the *Ex parte Young* fiction is applicable." *Id.* The Court noted that a state's ownership of land underlying navigable waters is an essential attribute of a state's sovereignty. *Id.* at 283, 117 S.Ct. 2028. The majority opined that "if the

Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Id.* at 287, 117 S.Ct. 2028. The Court ultimately held that under the particular and special circumstances presented, the *Ex parte Young* doctrine was inapplicable. *Id.* at 288, 117 S.Ct. 2028.

 Since *Coeur d'Alene* the appropriate standard for the application of the *Ex parte Young* doctrine has been questioned. In another portion of the *Coeur d'Alene* opinion, Justice Kennedy advocated a case-by-case balancing approach for applying the *Ex parte Young* exception. *Id.* at 270–80, 117 S.Ct. 2028. As the Eighth Circuit recently noted, "seven Justices refused to join this portion of the opinion." *Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota,* 362 F.3d 512, 517 (8th Cir. 2004) (citing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). Thus, the Eighth Circuit has ruled that when determining whether the doctrine of *Ex parte Young* applies, a court need only conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seek relief properly characterized as prospective." *Id.* Although this inquiry does not include an inquiry into the merits of the claim, it may include an inquiry as to whether the suit and the remedy it seeks implicate special sovereignty interests such as those found in *Coeur d'Alene. Union Electric Co. v. Missouri Dep't of Conservation,* 366 F.3d 655, 658 (8th Cir.2004) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 647, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) and *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)).

The Plaintiffs' complaint unquestionably alleges an ongoing violation of federal law and seeks prospective relief. Each of the five claims set forth in the complaint alleges a violation of both the federal constitution and federal statutes. *See* Complaint ¶¶ 48–68. The complaint also clearly asks for prospective relief. *See* Complaint, "Relief Sought" ¶¶ 1–4. Specifically, the Plaintiffs ask for a determination that portions of North Dakota's hunting regulations are unconstitutional and for a permanent injunction preventing the Defendants from any attempts to enforce these provisions. The only portion of the complaint that could conceivably be construed as a request for a monetary disbursement is the request for reasonable attorney fees for the individual Plaintiffs. Such a request is allowed for pursuant to 42 U.S.C. § 1988. The Court finds the Plaintiffs' complaint meets the requirements of the straight forward inquiry set forth in *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002).

The Court now must determine whether the *Ex parte Young* doctrine is inapplicable in this case under the framework of *Coeur d'Alene.* The Defendants cite to a portion of the *Coeur d'Alene* opinion wherein Justice Kennedy described two instances where the *Ex parte Young* doctrine has been applied to prohibit suits against states or state official acting in their official capacity. First, where no state forum is available and second, where the case calls for an interpretation of federal law. However, this approach was set forth in a portion of the *Coeur d'Alene* opinion with which a majority of the Supreme Court disagreed. As a result, this portion of the *Coeur d'Alene* opinion is not controlling. The Court will confine its review of the *Coeur d'Alene* exception to the standard articulated by a majority of the Supreme Court—whether the special sovereignty interests of a state are implicated by the action.

Since *Coeur d'Alene*, courts have narrowly defined the types of actions implicating the "special sovereignty interests" of a state. *See* 17 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4232 n. 36.4 (2d ed. 1988 & Supp.2004) (collecting cases). In a variety of contexts, several circuit courts have held that state sovereignty interests were not implicated, and thus, the *Coeur d'Alene* exception did not bar the actions. *See e.g., Nelson v. Geringer,* 295 F.3d 1082 (10th Cir.2002) (holding a state's regulation of Wyoming National Guard was insufficient to implicate a "special sovereignty interest" because of the dual federal and state nature of national guard service); *Arnett v. Myers,* 281 F.3d 552 (6th Cir.2002) (holding an action to determine whether state regulations prohibiting duck blinds on areas to which the plaintiffs' asserted riparian fishing rights did not implicate the "special sovereignty interests" of the state); *Duke Energy Trading and Marketing L.L.C. v. Davis,* 267 F.3d 1042 (9th Cir.2001) (holding the governor's emergency powers to take private property for the public benefit was a "special sovereignty interest," but the relief requested was not so much of a divestiture of the state's sovereignty to render the suit as one against the state itself); *In re Ellett,* 254 F.3d 1135 (9th Cir.2001) (holding an injunction to bar collection of state tax in a bankruptcy proceeding was not a sufficient "special sovereignty interest" because it prohibited the states from seeking to collect specific income tax obligations duly discharged in a federal bankruptcy proceeding); *TFWS, Inc. v. Schaefer,* 242 F.3d 198 (4th Cir. 2001) (holding a state's regulation of liquor was not a "special sovereignty interest" in part because of the pervasive federal interest in the regulation of liquor). In only a

few circumstances have appellate courts found that the "special sovereignty interests" of states were implicated so that *Coeur d'Alene* would operate to bar the suit. *See MacDonald v. Village of Northport Michigan,* 164 F.3d 964, 972 (6th Cir. 1999) (holding that a state's "great interest in maintaining access to the Great Lakes" was a "special sovereignty interest" that precluded an *Ex parte Young* suit); *ANR Pipeline v. Lafaver,* 150 F.3d 1178, 1193 (10th Cir.1998) (holding that a "state's interest in the integrity of its property tax system lie[s] at the core of the state's sovereignty.... [I]t is impossible to imagine that a state government could continue to exist without the power to tax.").

The Eighth Circuit has addressed the "special sovereignty interests" test of *Coeur d'Alene* on only a few occasions. Two months after the *Coeur d'Alene* decision, the Eighth Circuit decided *Mille Lacs Band of Chippewa Indians v. Minnesota,* 124 F.3d 904 (8th Cir.1997). In *Mille Lacs,* the Eighth Circuit did not partake in an extensive review of whether a special sovereignty interest of Minnesota was implicated in the litigation. Rather, the Eighth Circuit held that the *Coeur d'Alene* case did not bar the application of the *Ex parte Young* doctrine and the Eighth Circuit found the plaintiffs' claims were not barred by Eleventh Amendment immunity.

In a recent case, the Eighth Circuit held that *Coeur d'Alene* does not bar a suit against a state or its officers in their official capacity. In *Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota,* 362 F.3d 512 (8th Cir.2004), the Eighth Circuit narrowly construed the holding of *Coeur d'Alene.*

Relying primarily on *Coeur d'Alene Tribe,* the Governor argues that the *Ex parte Young* doctrine does not extend to this case because "regulation of eminent domain is as much a core sovereign interest of South Dakota as regulating submerged lands was for Idaho." But the comparison either proves too much or is unsound. On the one hand, the police power, too, is a "core sovereign interest," but *Coeur d'Alene Tribe* cannot apply to every suit for injunctive relief against a state official's exercise of the police power—that would effectively overrule the *Ex parte Young* doctrine, despite the Court's express declaration to the contrary in *Coeur d'Alene Tribe,* 521 U.S. at 269, 117 S.Ct. 2028, 138 L.Ed.2d 438. On the other hand, if the comparison is based on the fact that eminent domain is the power by which a State acquires ownership of land, and state-owned lands were at issue in *Coeur d'Alene Tribe,* the two cases are not comparable. This lawsuit does not involve lands that South Dakota *owns,* nor does it challenge the State's power to take land by eminent domain. Rather, as the district court explained, DM & E's claim turns on whether the State has used the statute delegating its eminent domain power to regulate and control a federally approved railroad project. 236 F.Supp.2d at 1007. Thus, the injunction DM & E seeks is within the traditional purview of *Ex parte Young* because it seeks "to bring the State's regulatory scheme into compliance with federal law." *Coeur d'Alene Tribe,* 521 U.S. at 289, 117 S.Ct. 2028, 138 L.Ed.2d 438 (O'Connor, J., concurring); *see Duke Energy Trading & Mktg., L.L.C. v. Davis,* 267 F.3d 1042, 1053–54 (9th Cir. 2001), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2327, 153 L.Ed.2d 159 (2002).

*Id.* at 516–17. The Eighth Circuit held the *Ex parte Young* doctrine authorized relief enjoining the governor of South Dakota from enforcing state statutes that violated or conflicted with federal law. 362 F.3d 512, 517.

In the present case, the Defendants assert that the relief sought is so intrusive upon North Dakota's state sovereignty that, if the Plaintiffs were to prevail, North Dakota would lose its ability to protect and preserve its wildlife. The Defendants characterize the activities at issue in this case and in *Coeur d'Alene* as a state's control over a natural resource. This comparison minimizes the true nature of the relief requested in *Coeur d'Alene*. As the Supreme Court concluded in *Coeur d'Alene*, the Court was not asked to decide a case about the regulation of submerged waterways, but rather it was presented with what was essentially a quiet title action. If the tribe received the relief it requested, title to the submerged land would have been granted to the tribe and the state would have not only been prohibited from enacting *any* regulation of the waterways, it would have permanently lost its ownership interest in the submerged land.

Such a drastic outcome is not the natural result of the relief requested by the Plaintiffs. The Plaintiffs are not asking that North Dakota be prohibited from regulating its wildlife. The relief requested would result in subjecting non-residents to the same hunting regulations as residents of North Dakota. Thus, if the Plaintiffs were to prevail, restrictions would be placed on North Dakota's right to regulate hunting and fishing within its borders. However, it would not prohibit North Dakota from enacting any and all regulations to protect its wildlife.

Further, as the Plaintiffs note, North Dakota's regulation of migratory birds is already limited by numerous international treaties and federal law. *See* Convention for the Protection of Migratory Birds, Aug. 16, 1916, U.S.-Gr.Brit. (on behalf of Canada), 39 Stat. 1702, T.S. No. 628; Convention for the Protection of Migratory Birds and Game Mammals, Feb. 7, 1936, U.S.-Mexico, 50 Stat. 1311, T.S. No. 912; Convention for the Protection of Migratory Birds and Birds in Danger of Extinction, and Their Environment, Mar. 4, 1972, U.S.-Japan, 25 U.S.T. 3329, T.I.A.S. No. 7990; Convention for the Conservation of Migratory Birds and Their Environment, Nov. 26, 1976, U.S.-U.S.S.R., 92 Stat. 3110, T.I.A.S. No. 9073, 16 U.S.C. § 703; Migratory Bird Treaty Act, 16 U.S.C. § 703–712. North Dakota has also received federal financial support for the acquisition of land for hunting, and in return, North Dakota has ceded some authority over its use of state hunting license fees. *See* Pittman–Robertson Wildlife Restoration Act, 16 U.S.C. § 669, *et seq.* In areas where federal regulatory schemes or federal funding is involved, most circuit courts have held that this federal interaction militates against a state's assertion that it has a "special sovereignty interest" in a particular activity. *See e.g., TFWS, Inc. v. Schaefer,* 242 F.3d 198 (4th Cir.2001) (holding a state's regulation of liquor was not a "special sovereignty interest" in part because of the pervasive federal interest in the regulation of liquor). Accordingly, the Court finds the *Coeur d'Alene* doctrine does not bar the Plaintiffs' claim because their requested relief does not implicate a "special sovereignty interest" of the State of North Dakota.

By finding that North Dakota's special sovereignty interests are not implicated, the Court does not intend to minimize the importance of North Dakota's power to preserve its wildlife and to regulate hunting within its borders. North Dakota has the right to manage wildlife, hunting, and fishing within its borders, as does Minnesota. Both states clearly distinguish between resident and non-resident sportsmen in the hunting regulations and fee schedules each state has adopted. The Court is also very mindful of United States Supreme Court precedent holding that

"[p]rotection of the wildlife of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection." *Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 391, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). However, the question at this stage of the litigation is not the propriety of North Dakota's hunting regulations or the probability of the Plaintiffs' success on their claims, but rather whether sovereign immunity bars the Plaintiffs' claims altogether.

The Court finds the Plaintiffs have set forth a claim for relief alleging an ongoing violation of federal law and seeking prospective relief. In addition, the Court finds that the Plaintiffs' action is the type authorized by *Ex parte Young* and that the doctrine set forth in *Coeur d'Alene* is not applicable in this case.

### III. *CONCLUSION*

For the reasons set forth above, the Court finds the Plaintiffs have standing to bring claims under the Commerce Clause, the Privileges and Immunities Clause, and 42 U.S.C. § 1983. In addition, the Court finds the Plaintiffs' claims are not barred by the doctrine of sovereign immunity. It is well-established that courts are appropriately prohibited from reviewing the merits of a claim when deciding whether the plaintiffs have standing to pursue an action in federal court. Even though many of the arguments made by the Defendants in their motion and brief were not addressed by the Court in its analysis of standing, this does not necessarily mean the Court finds the arguments unpersuasive. None of the Court's findings should be taken as an expression on the merits of the Plaintiffs' claims. A plaintiff may have standing to pursue a claim that is doomed to fail on its merits. In such a case, the courts are obligated to let the claim proceed even though its death may be immi-

nent. The Defendants' Motion to Dismiss is **DENIED.** (Docket No. 11).

**IT IS SO ORDERED.**