Mark KOSCIELSKI and Barbara Bergstrom, individually and d/b/a Koscielski's Guns and Ammo, Plaintiffs,

v.

CITY OF MINNEAPOLIS, Defendant.

No. Civ.03–4902(RHK/JSM).

United States District Court, D. Minnesota.

Jan. 26, 2005.

Randall D.B. Tigue, Randall Tigue Law Office, PA, Minneapolis, MN, for Plaintiffs.

C. Lynne Fundingsland, Burt T. Osborne, and Michael J. Rugani, Assistant City Attorneys, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiffs Mark Koscielski and Barbara Bergstrom operate Koscielski's Guns and Ammo ("Plaintiffs"), a Minneapolis firearms dealership. They have sued the City of Minneapolis ("the City") over a zoning ordinance that restricts where firearms dealerships may operate within Minneapolis. The City has moved for summary judgment on each of Plaintiffs' claims. For the reasons set forth below, the Court will grant the City's Motion.

### Background

The City has adopted a zoning ordinance that restricts where a "Firearms dealer" can operate ("the ordinance"). Under the ordinance, a "Firearms dealer" is "[a]ny person engaged in the sale, lease, trade or other transfer of firearms or ammunition at wholesale or retail."[1] Minneapolis Code of Ordinances § 520.160. Firearms dealers must be at least 250 feet from the nearest residence or office residence district and at least 500 feet from religious institutions, K–12 schools, child care centers or family or group family day cares, libraries, or parks. See id. § 536.20, Firearms dealer (1), (2). In addition, firearms dealers can only operate in certain downtown zoning districts as a "conditional use." (See Poor Aff. ¶ 8; Koscielski Aff. Exs. B–F (city maps).)

From April 1995 until approximately July 2003, Plaintiffs operated Koscielski's Guns and Ammo at 812 East 48th Street in Minneapolis. (Koscielski Aff. ¶¶ 3, 8–10, 19; Poor Aff. ¶ 4.) It is undisputed that Plaintiffs lawfully operated their business at this location as a nonconforming use.[2] (See Def.'s Mem. in Supp. at 1–2.) While operating on 48th Street, they rented the premises on a month-to-month lease. (Koscielski Aff. ¶ 7; Poor Aff. ¶ 2.) In Spring 2003, however, the property owner informed them that he planned to rent the space to other tenants.[3] (Koscielski Aff. ¶¶ 8, 10.) As a result, Plaintiffs attempted to relocate their business within Minneapolis. (Id. ¶ 13.) But because of the City's zoning ordinance, Plaintiffs had "virtually no area in which" to relocate. (Id. ¶ 14; see id. Exs. B–I.) According to Plaintiffs, "absolutely nothing [was] available" within "the extremely limited areas" that the ordinance allowed firearms dealers to operate. (Id. ¶ 18.) The City, however, has identified three Minneapolis locations where, as of May 2004, firearms dealers could operate consistent with the ordinance. (Osborne Aff. ¶ 8, Exs. 7–9; Poor Aff. ¶ 10.) Ultimately, Plaintiffs relocated their firearms dealership to 2926 Chicago Avenue South in Minneapolis. (Koscielski Aff. ¶ 19.) Plaintiffs admit that operating their business at this location violates the ordinance. (Id. ¶ 20.)

---

1. A "Firearm" is "[a]ny device, designed to be used as a weapon, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or other form of combustion, but excluding antique firearm, 'BB' gun, scuba gun, stud or nail gun used in the construction industry, or pop gun or toy gun." Minneapolis Code of Ordinances § 520.160.

2. In 1995, Plaintiffs sued the City and successfully obtained an injunction preventing the City from enforcing a moratorium ordinance barring new firearms dealers from operating. See Koscielski, et al. v. City of Minneapolis, Civ. No. 3–95–954 (PAM/JGL). That injunction has no bearing on the instant lawsuit.

3. Although Koscielski suggests that the City played a role in ousting him from the 48th Street location (see Koscielski Aff. ¶¶ 11, 12, Ex. A), that issue is irrelevant to the resolution of this Motion.

In July 2003, the City issued a cease and desist letter ordering Plaintiffs to halt operations at the Chicago Avenue location because their firearms dealership violated the ordinance. (*Id.* ¶ 21; Osborne Aff. Ex. 4 (letter).) As a result of the violation, the Federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") refused to transfer the federal firearms license from Plaintiffs' former location on 48th Street to their new location on Chicago Avenue. (Koscielski Aff. ¶ 22.) Thus, for three-and-a-half months, Plaintiffs had no federal license to sell firearms. (*Id.* ¶ 23.) Plaintiffs then negotiated a reinstatement of their license with the ATF on the condition that they not engage in the retail sale of firearms. (*Id.* ¶ 24.) Under this agreement, they may sell firearms at gun shows, to dealers, and at wholesale. (*Id.*) Plaintiffs admit, however, that their current operation is still "prohibited under the existing zoning laws" and is taking place "at best, with a wink and a nod from the city." (Pls.' Mem. in Opp'n at 13.)

In August 2003, Plaintiffs sued the City in Minnesota state court alleging a violation of equal protection (Count I), a violation of substantive due process (Count II), and a taking of property without just compensation (Count V). Plaintiffs also request declaratory relief (Count III) and judicial review of the ordinance under Minn.Stat. § 462.361 (Count IV). (*See* Am. Compl. ¶¶ 15–33.) The City removed the case to this Court and now moves for summary judgment on each claim.

### Standard of Review

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Mems v. City of St. Paul, Dep't of Fire & Safety Services,* 224 F.3d 735, 738 (8th Cir.2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *See Graves v. Arkansas Dep't of Fin. & Admin.,* 229 F.3d 721, 723 (8th Cir.2000); *Calvit v. Minneapolis Pub. Schools,* 122 F.3d 1112, 1116 (8th Cir.1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995).

### Analysis

#### A. Equal Protection

Plaintiffs assert that the City's zoning ordinance violates the Fourteenth Amendment's Equal Protection Clause. (*See* Pls.' Mem. in Supp. at 14.) The first step in an equal protection case is to determine whether the plaintiff has demonstrated that he was treated differently than others who were similarly situated to him. *Klinger v. Dep't of Corrections,* 31 F.3d 727, 731 (8th Cir.1994). The plaintiff must show that he is similarly situated "in all relevant respects." *Carter v. Arkansas,* 392 F.3d 965, 969 (8th Cir.2004) (citation and internal quotations omitted). Here, Plaintiffs argue that "no other business is subjected to the extreme zoning restrictions that firearms dealers are subjected to, effectively banning a lawful business from locating anywhere in the city." (Pls.' Mem. in Opp'n at 14.) But Plaintiffs have provided no evidence demonstrating that

they, as owners of a firearms dealership, are similarly situated in all relevant respects to any other business in Minneapolis. Absent this showing, Plaintiffs' equal protection claim is not viable. *Klinger*, 31 F.3d at 731.

■■■■ If Plaintiffs had made such a showing, however, their equal protection claim still fails. Because Plaintiffs do not allege that the City's zoning ordinance involves suspect classifications or impinges on fundamental rights, the ordinance is examined under the rational basis test. *Bannum, Inc. v. City of St. Charles*, 2 F.3d 267, 270 (8th Cir.1993); *see FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Under this test, the ordinance must be upheld if it is rationally related to a legitimate governmental purpose. *Bannum*, 2 F.3d at 270; *see Beach Communications*, 508 U.S. at 313, 113 S.Ct. 2096. The ordinance is to be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the [statutory] classification." *Beach Communications*, 508 U.S. at 313, 113 S.Ct. 2096. Plaintiffs bear the "heavy burden" of showing that the ordinance is arbitrary and irrational. *Bannum*, 2 F.3d at 270 (citation and internal quotations omitted); *see Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096.

Plaintiffs argue that "[i]t is clear that the fact that the city has effectively zoned [us] out of business is material to [our] equal protection … claim[ ]." (Pls.' Mem. in Opp'n at 8.) They apparently contend that the ordinance is arbitrary and irrational because there are "virtually no locations" where a firearms dealer can operate in Minneapolis. (*See id.* at 6.) They base their argument on a line of First Amendment adult entertainment cases beginning with *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310

(1976) and *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). (*Id.* at 6–8; *see id.* at 6 n. 4 ("Plaintiffs will place substantial reliance upon the *Young/Renton* line of cases.").) These cases generally hold that content-neutral time, place, and manner regulations are acceptable under the First Amendment so long as they are designed to promote a substantial governmental interest and allow reasonable alternative avenues for communication. *See Renton*, 475 U.S. at 47, 50, 106 S.Ct. 925; *BZAPS, Inc. v. City of Mankato*, 268 F.3d 603, 605 (8th Cir.2001).

Plaintiffs, however, assert no First Amendment claims in this case. Rather, they attempt to apply First Amendment principles developed in *Young* and *Renton*, which require (among other things) that content-neutral time, place, and manner regulations allow reasonable alternative avenues for communication, to this non-First Amendment case. But they provide no authority to suggest that these principles apply outside of the First Amendment context. Absent contrary authority, this Court will not apply these principles to Plaintiffs' equal protection claim.

The sole issue, therefore, is whether Plaintiffs have shown that the City's zoning ordinance is arbitrary and irrational. *Bannum*, 2 F.3d at 270. Under the rational basis test, the ordinance carries a presumption of rationality that can only be overcome "by a clear showing of arbitrariness and irrationality." *Id.* (citation and internal quotations omitted); *see Beach Communications*, 508 U.S. at 314, 113 S.Ct. 2096 ("On rational-basis review, a classification in a statute … comes to us bearing a strong presumption of validity." (citation and internal quotation omitted)). The ordinance will not be overturned "unless the varying treatment of different groups or persons is so unrelated to the

achievement of any combination of legitimate purposes that [the court] can only conclude that the [city's] actions were irrational." *Bannum*, 2 F.3d at 271 (citation and internal quotations omitted). Plaintiffs have the burden "to negative every conceivable basis which might support" the ordinance. *Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096 (citation and internal quotations omitted).

Here, the only evidence Plaintiffs present is the limited number of locations that are available for firearms dealers to operate under the ordinance. Plaintiffs, however, provide no authority that the ordinance's constitutionality under the rational basis test hinges on the number of locations it allows for firearms dealers to operate. While this may be a relevant consideration in First Amendment cases, which are concerned with alternative avenues of communication, this is not a First Amendment case. Without more, Plaintiffs fail to show that the ordinance has no conceivable basis for support. *See Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096. Accordingly, because Plaintiffs have failed to meet their heavy burden to demonstrate that the City's zoning ordinance is arbitrary and irrational, the Court will grant the City's Motion and dismiss Plaintiffs' equal protection claim with prejudice.

■■ Although Plaintiffs may believe that the City's ordinance is unwise and unfair, it is not the Court's role in cases such as this "to judge the wisdom, fairness, or logic of legislative choices." *Beach Communications*, 508 U.S. at 313, 113 S.Ct. 2096. As the Supreme Court has said, "[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted...." *Id.* (citation and internal quotations omitted).[4]

## B. Substantive Due Process

■ Plaintiffs next argue that the City has deprived them of their federal firearms license in violation of their substantive due process rights under the Fourteenth Amendment. (*See* Pls.' Mem. in Opp'n at 14.) "A plaintiff asserting a substantive due process claim must establish that the government action complained of is 'truly irrational', that is, 'something more than ... arbitrary, capricious, or in violation of state law.'" *Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993) (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir.1992)). "To illustrate this heightened

---

**4.** Plaintiffs apparently advance a second equal protection claim—that "to fail to enforce the ordinance against gun shows at the Minneapolis Convention Center, located immediately adjacent to two churches, while enforcing it against Plaintiffs has no rational basis." (Pls.' Mem. in Supp. at 14.) While the Equal Protection Clause prohibits government officials from selectively applying the law in a discriminatory way, unequal application of the law does not violate equal protection "unless there is shown to be present in it an element of intentional or purposeful discrimination." *Central Airlines, Inc. v. United States*, 138 F.3d 333, 335 (8th Cir.1998) (citation and internal quotations omitted). Here, the sum-total of Plaintiffs' supporting evidence is the following paragraph from Koscielski's affidavit: "Notwithstanding the total ban on firearms dealers, the Minneapolis Convention Center, located immediately next door to two churches, holds an annual gun show, that which guns are sold retail, with no objection from the city." (Koscielski Aff. ¶ 25.) This evidence reveals no intentional or purposeful discrimination by the City in its alleged unequal application of the zoning ordinance. Therefore, because they have failed to produce evidence by which a reasonable fact-finder could conclude that the City's conduct was intentionally or purposefully discriminatory, Plaintiffs' second equal protection claim must be dismissed.

standard for substantive due process claims in the zoning context, the *Chesterfield* court gave as an example of such irrationality a zoning ordinance applying only to persons whose names begin with a letter in the first half of the alphabet." *Id.* (quoting *Chesterfield*, 963 F.2d at 1104). It the plaintiff's burden to show that the challenged zoning ordinance is "truly irrational." *See id.*

Plaintiffs have not met their burden. Having failed to show that the ordinance is irrational in the equal protection context, it follows that they have failed to show the ordinance to be "truly irrational" in the substantive due process context. *See Knapp v. Hanson*, 183 F.3d 786, 790 (8th Cir.1999) ("[H]aving found that the statute in question does not violate equal protection, it follows that the statute does not violate substantive due process." (citation omitted)). Although Plaintiffs assert that "it is clear that to enact a zoning ordinance which deprives a legitimate business of any place it may reasonably locate is truly egregious, abusive, or irrational" (Pls.' Mem. in Opp'n at 14), this argument is again based on First Amendment principles (*see id.* at 8). As with their equal protection claim, Plaintiffs have provided no authority to suggest that these principles apply to substantive due process claims. Moreover, Plaintiffs have not shown that the ordinance approximates the level of irrationality that was contemplated in *Chesterfield* as violative of substantive due process. Accordingly, because Plaintiffs have failed to present evidence from which a reasonable fact-finder could conclude that the City's zoning ordinance is "truly irrational," the Court will grant the City's Motion and dismiss Plaintiffs' substantive due process claim with prejudice.

## C. Takings

▇ Finally, Plaintiffs argue that "the city's enforcement of their zoning ordi-

nance cost [them] their federal firearms license for at least three and one-half months." (Pls.' Mem. in Opp'n at 11.) They contend that this constituted a taking in violation of the Fifth Amendment's Just Compensation Clause (*see id.* at 10–13), which provides, "[N]or shall private property be taken for public use, without just compensation," U.S. Const. amend. V. The City asserts that Plaintiffs' takings claim is not ripe because they have not exhausted state compensation procedures as required under *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). (Def.'s Mem. in Supp. at 12–13.)

In *Williamson*, the Supreme Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and has been denied just compensation." 473 U.S. at 195, 105 S.Ct. 3108; *see Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir.2003) ("Until [the plaintiff] has exhausted his state court remedies, his [Fifth Amendment takings] claim may not be brought in federal court."); *Carpenter Outdoor Advertising Co. v. City of Fenton*, 251 F.3d 686, 690 (8th Cir.2001) ("[T]he general rule is that a plaintiff must seek compensation through state procedures before filing a federal takings claim." (citation and internal quotations omitted)).

In Minnesota, a plaintiff may seek compensation for a taking through an inverse condemnation action. *See Bailey v. United States Army Corps of Eng'rs*, 2002 WL 31728947, at *11 (D.Minn. Nov. 21, 2002) (Kyle, J.); *Kottschade v. City of Rochester*, 2002 WL 91641, at *3 (D.Minn. Jan. 22, 2002) (Montgomery, J.), *aff'd Kottschade*, 319 F.3d 1038 (8th Cir.2003); *see Wilson v.*

*Ramacher*, 352 N.W.2d 389, 394 (Minn. 1984) (noting availability of an inverse condemnation action). In this case, however, Plaintiffs have not sought compensation through this procedure and have not shown that such a procedure is unavailable or inadequate. Thus, until they have exhausted the State's compensation procedure as required under *Williamson*, their federal takings claim is not ripe for adjudication.

■ Attempting to salvage their takings claim, Plaintiffs argue that the City has waived its ripeness argument by removing this case from state court. (Pls.' Mem. in Opp'n at 9.) They further assert that they "commenced their action in state court, seeking the very judicial remedy which [the City] now claims [Plaintiffs] should have sought." (*Id.*) Plaintiffs' arguments are unavailing. First, as they candidly admit, they provide no authority to suggest that the City has waived its ripeness argument by removing the case from state court. Nor have they provided any authority to suggest that removal absolves them of the requirement under *Williamson* to exhaust the State's compensation procedure. Second, despite their assertions to the contrary, Plaintiffs have not

maintained an inverse condemnation claim at any point in this case. Accordingly, because Plaintiffs' takings claim is not ripe for adjudication, the Court will grant the City's Motion and will dismiss Plaintiffs' claim without prejudice.[5]

### Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that Defendant City of Minneapolis's Motion For Summary Judgment (Doc. No. 13) is **GRANTED**. Each Count of Plaintiffs' Amended Complaint (Doc. No. 1) is **DISMISSED** as follows:

A. Counts I (equal protection), II (substantive due process), III (declaratory relief), and IV (judicial review) are **DISMISSED WITH PREJUDICE**; and

B. Count V (taking of property without just compensation) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

5. Plaintiffs have clearly waived their remaining claims for declaratory relief (Count III) and judicial review (Count IV) because they have not responded to the City's Motion regarding these claims. *See Graham v. Rosemount, Inc.*, 40 F.Supp.2d 1093, 1101 (D.Minn.1999). But even without a waiver, these claims would not have withstood summary judgment. First, Plaintiffs requested a declaration that the ordinance violates Minn. Stat. §§ 471.633 (legislature preempts city authority to regulate firearms) and 471.635 (notwithstanding preemption, city may regulate location where firearms are sold), but they have not shown the City's zoning decision was "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Molnar v. County of Carver Bd. of Comm'rs*, 568 N.W.2d 177, 181 (Minn.App.1997) (citation

and internal quotations omitted). Second, they requested a declaration that the ordinance violates their customers' alleged right to possess firearms, but they have not demonstrated that they have standing to assert this claim, *see Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1378–79 (8th Cir.1997), and they have not shown that possession of any such firearm bears "some reasonable relationship to the maintenance of a militia," *United States v. Pfeifer*, 371 F.3d 430, 438 (8th Cir.2004). Finally, they requested judicial review under Minn.Stat. § 462.361, but they have not shown that the ordinance is "unsupported by any rational basis." *Campion v. County of Wright*, 347 N.W.2d 289, 291 (Minn.App. 1984) (citation and internal quotations omitted).