ROBERT W. PRATT, Judge
Before the Court is Defendants' Motion for Judgment on the Pleadings, filed on March 21, 2019. ECF No. 32. Plaintiffs filed a response on April 11, 2019. ECF No. 38. The matter is fully submitted.
*594 I. BACKGROUND[1]
Schneur Cadaner is an Orthodox Jewish Rabbi and a member of Chabad Lubavitch, an Orthodox Jewish Hasidic movement. ECF No. 20 ¶¶ 11-13. He and his wife live in a house in Bettendorf, Iowa, where the Rabbi conducts various personal and public religious activities, including shabbat services, prayer, and bible studies. Id. ¶ 22-25. Chabad Lubavitch of Bettendorf advertises these services to the public with a website. Id. Ex. D-2.
Defendant City of Bettendorf has zoning ordinances in place that restrict what land may be used for in certain areas of the city, Id. ¶ 20, and Plaintiffs' house is located in an R-1 Single-Family Residence District that requires a special use permit for houses of worship, Bettendorf City Code §§ 11-6A-1; 11-6A-3.[2] The Board of Adjustment also has broad authority to issue variances apart from special use permits. Id. § 11-2B-4(c). The City, through its employees, has sent three letters to Rabbi Cadaner regarding the Chabad and the use of the house for religious services. ECF No. 20 ¶¶ 27-29. The first two letters indicate that Plaintiffs need a special use permit or variance from the Board of Adjustment in order to use the property as a house of worship. Id. 20 ¶¶ 27, 29. The third states that Plaintiffs might need a business license for home occupation. Id. ¶ 28. Rabbi Cadaner does not allege he ever responded to these inquiries or applied to the Board of Adjustment for a special use permit or variance. After the first two letters were sent, the Bettendorf City Council approved a new zoning scheme that allows houses of worship in R-1 districts as of right. See id. Ex. B ("This section has been affected by a recently passed ordinance, 35-17 - ZONING AMENDMENTS."); Bettendorf, Iowa Ordinance 35-17, §§ 11-4-5, 11-5-4 n.1 (Oct. 17, 2017).
II. STANDARD OF REVIEW
" 'Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law,' the same standard used to address a motion to dismiss for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6)." Ashley Cty., Ark. v. Pfizer, Inc. , 552 F.3d 659, 665 (8th Cir. 2009) (citation omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). While not a "probability requirement," the plausibility standard requires a showing of more than just the "sheer possibility" of relief. Braden v. Wal-Mart Stores, Inc. , 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal , 556 U.S. at 662, 129 S.Ct. 1937 ). To determine whether a complaint has stated a claim for the purposes of Rule 12(b)(6), "the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." Hager v. Ark. Dep't of Health , 735 F.3d 1009, 1013 (8th Cir. 2013). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden , 588 F.3d at 594. "Determining whether a claim is *595 plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " Hamilton v. Palm , 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting Iqbal , 556 U.S. at 679, 129 S.Ct. 1937 ).
III. ANALYSIS
Plaintiffs' First Amended Complaint alleges nine causes of action. First, for violations of Plaintiffs' First Amendment rights under the Free Exercise Clause of the U.S. Constitution; second, for violations of Plaintiffs' free exercise rights under article I, section 3 of the Iowa Constitution ; third, for violations of the federal Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc et seq. ; fourth, for violations of the federal Civil Rights Act of 1871, 42 U.S.C. § 1983 ; fifth, for violations of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution; sixth, for violations of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution; seventh, for violations of equal protection and non-discrimination guarantees under article I, section 3 of the Iowa Constitution ; eighth, for violations of due process under article 1, section 9 of the Iowa Constitution ; and ninth, for injunctive relief.
A. Ripeness
The heart of Plaintiffs' claims arises out of Bettendorf's local ordinances, and primarily the zoning code, which Plaintiffs contend is unconstitutionally limiting them from using their property as a house of worship to host religious services. See generally ECF No. 23. Defendants have previously raised the issue of ripeness, see ECF No. 24-1 at 8-11, and the Court finds it appropriate to address it at this time. "The issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction." Dakota, Minn. & E. R.R. Corp. v. S.D. , 362 F.3d 512, 520 (8th Cir. 2004). This Court, as a court of limited jurisdiction, has a duty to assure itself that it has subject-matter jurisdiction in every case. Id. ; see Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis , 893 F.2d 968, 969 (8th Cir. 1990). "The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." Neb. Pub. Power Dist. v. MidAmerican Energy Co. , 234 F.3d 1032, 1037 (8th Cir. 2000). "The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.' " Vogel v. Foth & Van Dyke Assocs., Inc. , 266 F.3d 838, 840 (8th Cir. 2001). The general ripeness inquiry is one into "the 'fitness of the issues for a judicial decision' and 'the hardship to the parties of withholding court consideration.' " Neb. Pub. Power Dist. , 234 F.3d at 1038 (quoting Abbott Labs. v. Gardner , 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ).
For land-use challenges like Plaintiffs, however, the Supreme Court has articulated a more specific ripeness inquiry. In addressing the ripeness of a takings claim to a zoning law, the Supreme Court held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."[3]
*596 Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank , 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), overruled in part by Knick v. Twp. of Scott , No. 17-647, --- U.S. ----, 139 S.Ct. 2162, 204 L.Ed.2d 558, 2019 WL 2552486 (June 21, 2019). The Supreme Court explained that a claim is not ripe when the government entity has the power to grant a variance but the applicant has not applied for one because the claim is not yet final. Id. at 193-94, 105 S.Ct. 3108. The Supreme Court also noted this was true of a claim "whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under ... the Fifth Amendment." Id. at 200, 105 S.Ct. 3108.
The Eighth Circuit has not addressed whether Williamson County 's finality requirement is specifically applicable to RLUIPA. The Eighth Circuit has, however, imposed a finality requirement on due process and equal protections claims relating to land use. McKenzie v. City of White Hall , 112 F.3d 313, 317 (8th Cir. 1997) ("Because the City's decisions to deny zoning and building permits absent surrender of the privacy buffer were final, the [plaintiffs'] due process and equal protection claims based on those decisions are ripe."); Christopher Lake Dev. Co. v. St. Louis Cty. , 35 F.3d 1269, 1273 (8th Cir. 1994) (applying the finality requirement to equal protection and due process claims); see also Missouri ex rel. Mo. Highway & Transp. Comm'n v. Cuffley , 112 F.3d 1332, 1337-38 (8th Cir. 1997) (denying as unripe state's action for declaratory judgment before the state approved or denied a permit application). And two other district courts in this Circuit have applied the finality requirement to RLUIPA. See New Life Evangelistic Ctr., Inc. v. City of St. Louis , No. 4:15-cv-00395, 2015 WL 6509338, at *4-*5 (E.D. Mo. Oct. 27, 2015) ; Woodridge Church v. City of Medina , No. 11-cv-00275, 2012 WL 2395195, at *3-*5 (D. Minn. June 25, 2012).
To the Court's knowledge, every other circuit to have considered this issue has also applied the finality requirement to RLUIPA claims and related land use and zoning challenges. See Guatay Christian Fellowship v. Cty. of San Diego , 670 F.3d 957, 979 (9th Cir. 2011), cert. denied , 568 U.S. 940, 133 S.Ct. 423, 184 L.Ed.2d 255 (2012) ; Miles Christi Religious Order v. Twp. of Northville , 629 F.3d 533, 537-38 (6th Cir. 2010) ; Grace Cmty. Church v. Lenox Twp. , 544 F.3d 609, 617-18, (6th Cir. 2008) ; Murphy v. New Milford Zoning Comm'n , 402 F.3d 342, 351-52 (2d Cir. 2005) ; Congregation Anshei Roosevelt v. Planning & Zoning Bd. , 338 F. App'x 214, 216-19 (3d Cir. 2009). As "land use disputes are uniquely matters of local concern more aptly suited for local resolution," Murphy , 402 F.3d at 348, and here the zoning board "has the power to grant the *597 permit that [Plaintiffs] need[ ]," Guatay , 670 F.3d at 980, this Court is wary of wading into matters where the crucial dispute could have been solved by an application to the Board of Adjustment. The Court therefore determines that the finality requirement is appropriately applied to Plaintiffs' RLUIPA claim.
The Court now proceeds to assess whether Plaintiffs have properly alleged the existence of a final decision as to the use of their land by Defendants. A final decision is "a final, definitive position regarding how" the regulations will apply "to the particular land in question." Williamson Cty. , 473 U.S. at 191, 105 S.Ct. 3108. "A 'final decision' ... does not refer to a decision about whether the [plaintiff] is currently violating land use regulations" but "whether the [plaintiff] will or will not be granted a permit to use the property as it wishes moving forward." Guatay , 670 F.3d at 981.
Plaintiffs do not allege they sought a special use permit, variance, license, or otherwise attempted to follow up with the City in order to obtain a decision as to their use of the land. They were informed by letter that the City believed they should apply to the Board of Adjustment, along with the procedures for doing so and with invitations to address any additional questions Plaintiffs might have had. ECF No. 20 Exs. C, D-1, D-2. Other than receiving letters, Plaintiffs did not apparently receive any fines or other adverse actions. The Court agrees with Defendants that Plaintiffs have not met the finality requirement to ripen their claims, having forgone obtaining final decisions from local authorities as to the use of Plaintiffs' property that would further the Court's understanding of the dispute.
Plaintiffs argue that pursuit of an appeal to the Board of Adjustment would be futile because the land is not within a "primary or secondary thoroughfare" that would allow them to receive a special use permit from the Board of Adjustment.[4] ECF No. 38 at 11-12; see S.D. Mining Ass'n, Inc. v. Lawrence Cty. , 155 F.3d 1005, 1008-09 (8th Cir. 1998) ("Because applying for and being denied a county permit for surface metal mining would be an exercise in futility, we will not require plaintiffs to do so before they may challenge the ordinance."). Futility excuses the failure to obtain a final decision "when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." Murphy , 402 F.3d at 349. Plaintiffs' assertion of futility, however, overlooks at least three uncertainties. First, whether the City in fact treats the streets the land sits on as primary or secondary thoroughfares appears to be pure speculation. The letters Plaintiffs received, written by the City Planner and the City Administrator, encourage Plaintiffs to apply for a special use permit, suggesting they did not believe such a permit would be necessarily unavailable. Second, the Board of Adjustment may authorize "variances from the terms of this title" unrelated to special use permits, upon showing: "particular hardships;" that the variance would be "in harmony with the general purpose, intent and spirit" of the zoning code; or that the variance would do "substantial justice." Bettendorf Code § 11-2B-4(c)(1)-(4). In other words, the Board of Adjustment had the authority to allow Plaintiffs' desired use if asked. Many of the same arguments *598 Plaintiffs make to the Court regarding the relative size of Chabad's meetings and the nature of the activities as nondisruptive, see, e.g. , ECF No. 38 at 6, 12, would also be more appropriately made first to the Board of Adjustment to justify a permit or variance. Third, the zoning ordinance was recently changed to allow the houses of worship in R-1 districts as of right, suggesting that the City might in fact have been amenable to such uses. Plaintiffs' bare allegations of futility and hostility to their desired use are not supported by any alleged, non-conclusory facts, and the Court finds that Plaintiffs' efforts to obtain a final decision would not have been futile. As such, Plaintiffs' RLUIPA claim is not ripe.
Had Plaintiffs participated in the local process immediately, they could have obtained a decision sooner, and at less expense than the cost of filing this lawsuit. Because Plaintiffs have not obtained a final decision as to the use of their land, the Court finds that their RLUIPA claim is not ripe and should be dismissed.
B. Constitutional Claims
Plaintiffs allege, in Counts I, II, and IV-IX additional constitutional claims for violations of their rights to Free Exercise, Due Process, and Equal Protection under the Federal and Iowa Constitutions. Each of these claims arises from the same underlying facts as Plaintiffs' RLUIPA claim: City ordinances required permits or licenses for Plaintiffs to use the property as a house of worship. Other courts have held that the same finality requirement that applies to RLUIPA claims also applies to related constitutional claims arising from zoning laws or other land-use regulations. The finality requirement applies to related free exercise claims, see Miles Christi , 629 F.3d at 536 ; Murphy , 402 F.3d at 350, 354, and the Eighth Circuit has previously subjected due process and equal protection claims to the finality inquiry when those claims were based on land use challenges, McKenzie , 112 F.3d at 317 ; Christopher Lake Dev. , 35 F.3d at 1273. See also Guatay , 670 F.3d at 984 ("[S]uch procedural due process claims ripen only when it is clear that a distinct deprivation of a constitutionally protected interest in liberty or property has already occurred ...."); Strickland v. Alderman , 74 F.3d 260, 265 (11th Cir. 1996) (applying the final-decision requirement to due process and equal protection claims). And of course, Williamson County itself explained that its ripeness inquiry applied to the claim in that case irrespective of whether it was a takings claim or a due process violation. 473 U.S. at 200, 105 S.Ct. 3108. The Court therefore determines that Plaintiffs' federal constitutional claims are, like Plaintiffs' RLUIPA claim, unripe at this time because they lack a final decision from the local authority.
For the Iowa constitutional claims, Iowa courts do not appear to have addressed whether the Williamson County finality requirement applies to land-use claims under the Iowa Constitution. Iowa courts do, however, follow Williamson County in takings cases and require a final decision before seeking relief under a state inverse condemnation proceeding. See Molo Oil Co. v. City of Dubuque , 692 N.W.2d 686, 692-93 (Iowa 2005) ; Iowa Coal Min. Co. v. Monroe Cty. , 555 N.W.2d 418, 433-34 (Iowa 1996). Iowa also interprets the free exercise, equal protection, and due process clauses of its constitution alongside their federal counterparts in most areas. See Rudd v. Ray , 248 N.W.2d 125, 130 (Iowa 1976) (free exercise); Bandstra v. Covenant Reformed Church , 913 N.W.2d 19, 36-38 (2018) (same); Residential and Agric. Advisory Comm., LLC v. Dyersville City Council , 888 N.W.2d 24, 50 (Iowa 2016) (equal protection);
*599 City of Sioux City v. Jacobsma , 862 N.W.2d 335, 340 (Iowa 2015) (due process). With this understanding in mind, the Court concludes that Williamson County 's finality rule also applies to Plaintiffs' claims under the Iowa Constitution, and that those claims too are unripe.
C. Imminent or Distinct Harms
Plaintiffs offer two responses. First, Plaintiffs argue that the notices of enforcement were an imminent harm such that Murphy and the ripeness inquiry are inapplicable. ECF No. 26-1 at 7. It is true enough that, absent the finality requirement, Plaintiffs' claims would be ripe because one normally "does not have to await the consummation of threatened injury to obtain" relief. Babbitt v. United Farm Workers Nat'l Union , 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (quoting Pennsylvania v. West Virginia , 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923) ). But Plaintiffs overlook that under Iowa law-just like as in Murphy and Miles Christi -an appeal to a Board of Adjustment regarding a land use decision "stays all proceedings in furtherance of the action appealed from." Iowa Code § 414.11 ; see Murphy , 402 F.3d at 351 ; Miles Christi , 629 F.3d at 542. The nature of the finality requirement is also such that the final decision from the local authority informs the actual injury to Plaintiffs, and courts are not well-situated to address that injury prior to a final decision.
Second, Plaintiffs contend that they were distinctly harmed by both the requirements that they seek a permit or license, and by the receipts of the notices themselves, such that those claims are independently ripe. See, e.g. , ECF No. 38 ¶¶ 33-37, 44-48. But none of the harms Plaintiffs allege they suffered-such as the need to suspend their activities, "economic injury and public embarrassment," or "a cloud of uncertainty" as to enforcement, ECF No. 20 ¶¶ 51, 105-arise separately and independently from Bettendorf ordinances. Plaintiffs do not allege that Defendants publicized the notices, for example, or interfered in any other way beyond referring Plaintiffs to them. And, as noted, an appeal to the Board of Adjustment would also have stayed other proceedings, limiting any immediate harm from the City's actions.
When courts have chosen not to apply Williamson County 's finality requirement, they have done so when the land-use regulation was changed to impose additional burdens after a plaintiff acquired the land, or when the regulation was targeted towards a specific plaintiff. The Eighth Circuit found a challenge to a city ordinance ripe when, after apparently being given approval for the use of property for a halfway house, "the City amended the zoning ordinances by adding half-way houses to the list of conditional uses" in the district after "some opposition to it was raised." Bannum, Inc. v. City of St. Charles , 2 F.3d 267, 269, 272 (8th Cir. 1993). The Sixth and Ninth Circuits have also so held. Nasierowski Bros. Inv. Co. v. City of Sterling Heights , 949 F.2d 890, 894-95 (6th Cir. 1991) (declining to apply the finality requirement when the zoning law was changed while the plaintiff owned the property); Harris v. Cty. of Riverside , 904 F.2d 497, 500-501 (9th Cir. 1990) (same). The First Circuit declined to apply the finality requirement where "the Ordinance [was] designed to apply only to the Church, unlike the neutral and generally applicable zoning" laws often at issue in these cases. Roman Catholic Bishop of Springfield v. City of Springfield , 724 F.3d 78, 91-92 (1st Cir. 2013). The Eleventh Circuit reached the same conclusion with respect to a city's designation of a church as a historic landmark.
*600 Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach , 727 F.3d 1349, 1356-57 (11th Cir. 2013). For general land-use claims, Temple B'Nai Zion notwithstanding, the Eleventh Circuit nonetheless applies the finality requirement. See Strickland , 74 F.3d at 265 ; see also Eide v. Sarasota Cty. , 908 F.2d 716, 726 (11th Cir. 1990).
In the absence of some distinct harm, no court has found this type of claim ripe in circumstances similar to the ones presented here. The challenged ordinances all existed before Plaintiffs acquired their property and are not specifically targeted or focused on Plaintiffs. The only relevant change to the law that occurred after Plaintiffs acquired the property was one that removed a key burden that Plaintiffs complain of. To ignore the finality requirement in these circumstances would render it a nullity and undermine its purposes in both allowing local disputes to resolve themselves and complete the record for the reviewing court. If Plaintiffs are correct in their assertions about the size and non-disruptive nature of their activities, they may well have prevailed in obtaining a special use permit. Because they refused to seek one, they cannot now end-run that process in federal court.[5]
IV. CONCLUSION
For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (ECF No. 32) is GRANTED. Plaintiffs' First Amended Complaint is DISMISSED without prejudice because it is not ripe.
IT IS SO ORDERED.

Because the parties are already familiar with the facts of this case, and they were included in the Court's prior order, see ECF No. 29, the Court only summarizes them here.

The Bettendorf City Code explaining R-1 residential districts is reproduced in ECF No. 20 Ex. B. It can also be found at https://www.sterlingcodifiers.com/codebook/index.php?book_id=1003.

Williamson County also required a second inquiry, a "state-litigation requirement" that required seeking compensation in state court first. 473 U.S. at 194-95, 105 S.Ct. 3108. That requirement was unique to the nature of a takings claim, is not be applicable to the claims at issue in this case, and was overturned by the Supreme Court's recent decision in Knick v. Township of Scott, Pennsylvania , 588 U.S. ----, 139 S.Ct. 2162, 204 L.Ed.2d 558, 2019 WL 2552486 (2019). In Knick , the Supreme Court explained that it was "not question[ing] the validity of [Williamson County 's ] finality requirement." Id. 139 S.Ct. 2162, 2019 WL 2552486, at *4. Nor does the reasoning in Knick challenge the vitality of the finality requirement. The Supreme Court addressed the effect of later precedent holding that takings claims previously adjudicated in state court were barred by the full faith and credit statute from being litigated in federal court. San Remo Hotel, L.P. v. City & Cty. of San Francisco , 545 U.S. 323, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005). Therefore, "[t]he adverse state court decision that, according to Williamson County , gave rise to a ripe federal takings claim simultaneously barred that claim, preventing the federal court from ever considering it." Knick , 139 S.Ct. at ----, 2019 WL 2552486, at *5. Seeking a final decision from a local administrative body, however, does not implicate this state-litigation dilemma, and Knick does not affect the analysis here.

Plaintiffs make no argument as to why further inquiry as to the business license application would be futile.

The zoning ordinance was changed after Plaintiffs received notice of the zoning laws, and any harm from their failure to seek a variance before the change is a result of their own inaction. "[T]he Court finds that Plaintiff[s] cannot escape the requirements [of finality] simply by prematurely filing a case in federal court." New Life Evangelistic Ctr. , 2015 WL 6509338, at *6.